FOSTER, *Plaintiff in Error*, v. GILLESPIE.

1. **Chattel Mortgage:** PRIORITY: NOTICE. F sold to C certain goods to be paid for partly in cash and partly in notes. To make the cash payment, the latter borrowed $2,000 from G, it being agreed between the three that in consideration of C having one year to pay the loan, G should have the first lien upon the goods. F then delivered the goods to G, and on the same day a bill of sale, which

was not recorded, and four notes payable three, six, nine and twelve months thereafter, were given by C to G. C afterwards, failing to pay his notes to F, gave F a chattel mortgage on the goods, which was recorded. *Held*, that the priority of F's mortgage over G's lien depended upon F's knowledge of the change in the agreement as to the time to be given by G to C on the $2,000.

2. **This Knowledge should be Actual.** An instruction, therefore, that the bill of sale to G would have no validity as against F, unless the latter knew of the change in the terms of the credit given to C, " or had full opportunity or means of acquiring actual knowledge " of it; *Held*, error.

*Error to Jackson Circuit Court.*—Hon. SAM'L L. SAWYER, Judge.

*L. C. Slavens* for plaintiff in error.

NORTON, J.—Plaintiff brought suit in the circuit court to obtain possession of the goods described in the petition. Defendant gave bond and retained the goods, and on trial, the evidence, as shown by the bill of exceptions, was as follows: About July 1st, 1872, plaintiff owned the goods in question, and agreed to sell them to Currier for $4,500, part cash and the balance in ten notes of said Currier for $150 each, and one for $100, payable respectively, one, two, three, four, five, six, seven, eight, nine, ten and twelve months from date. To make out his cash payment, Currier, with the knowledge and consent of plaintiff, borrowed $2,000 of defendant, upon the understanding and agreement between plaintiff and defendant and Currier, that defendant should have the first lien on the goods to secure his $2,000 loaned to Currier, and that he would give Currier one year's time to pay said $2,000. Plaintiff consented to this arrangement because Currier, by having one year to pay the $2,000, would have a better chance to pay plaintiff his notes, maturing monthly as aforesaid, in the meantime. On July 5th, the sale of the goods by plaintiff to Currier was consummated, and plaintiff delivered to Currier the goods, and the following bill of sale, viz.:

" KANSAS CITY, Mo., July 5th, 1872.

" A. G. Currier bought of John S. Foster all furniture, beds and bedding, stoves, carpets, crockery, &c., all and everything belonging to me now in 'State Line House,' $4,500, (forty-five hundred dollars,) as per invoice hereto attached.

" Received payment.

" JOHN S. FOSTER."

On the same day, (July 5th,) defendant loaned said $2,000 to Currier, who indorsed on the back of said bill of sale he had received of plaintiff a bill of sale to defendant, to secure said $2,000, and delivered the same to defendant, which last bill of sale is as follows:

" For value received, I hereby sell and convey to A. J. Gillespie all of the within described property, and hereby release all my right, title and interest thereunto.

"July 5th, 1872. " A. G. CURRIER.

" Attest: WM. KEPNER."

Instead of paying the $2,000 directly to Currier, defendant, on request of Currier, paid it to plaintiff, part in money and part by receipt for debts which plaintiff owed defendant. Neither of said bills of sale were acknowledged or recorded. Instead of defendant giving Currier one year to pay the $2,000 loaned him, as was first agreed, he took from said Currier therefor, four notes of $500 each, respectively payable three, six, nine and twelve months from July 5th, 1872. These notes and last bill of sale were made in the office of the " State Line House." Defendant never told plaintiff that he intended to take, or had taken, of Currier, said four notes for his loan, instead of giving Currier one year's time, as was first agreed, and plaintiff did not know that such change of time was contemplated or made, until October 15th, 1872, when he learned it from Currier. At the time Currier gave said four notes and bill of sale to defendant, plaintiff was in the " State Line House," and part of the time was in the

room when the same was done, and might, upon inquiring, have learned of said change of time for payment of said $2,000, but paid no attention to the matter at the time, and did not know of said change of time, but might have known if he had paid attention at the time. A few days after this defendant showed plaintiff the bill of sale he had taken from Currier.

Currier had possession of the goods from July 5th, 1872, until January, 1873, when he ran away and abandoned the goods, and the defendant came and took possession of them, having previously received $400 in part payment of his notes. On the 6th of July, 1872, Currier executed to plaintiff his said ten promissory notes for part purchase money of said goods, none of which have ever been paid. About the 15th of October, 1872, Currier having failed to pay such of said notes as were due, plaintiff first learned from him that defendant had not given him one year's time to pay the $2,000, as was first agreed. Plaintiff then took from Currier a chattel mortgage on said goods, to secure the payment of his said ten notes for part purchase money of said goods, which mortgage was duly acknowledged, and was recorded in the recorder's office of Jackson county, Missouri, on the 17th day of October, 1872, book 99, page 462, and was read in evidence on said trial, and is copied in the bill of exceptions in this case. Before the trial of this cause, defendant sold all the goods in controversy, which were worth $1,300 at the time this suit was brought.

On the trial below, (which was by the court,) plaintiff asked the court to give the following declaration of law, viz.: "The plaintiff asks the court to declare the law to be, that if it appears from the evidence that the conveyance in writing of the property in dispute by A. G. Currier to defendant, was given to secure a debt from Currier to defendant, then the same is a mortgage, and that inasmuch as the same was not acknowledged and recorded, nor the possession of the property delivered to and retained by

defendant, said conveyance is absolutely void as to this plaintiff." This instruction was refused, and plaintiff excepted at the time.

The court, thereupon gave the following instruction, (which was objected to by plaintiff, and his exceptions saved,) viz. : "The plaintiff can only maintain this action by virtue of the rights acquired under the mortgage read in evidence ; and if it appears from the evidence that the plaintiff, at the time he took that mortgage, had notice that said Currier had made to defendant the bill of sale of the property in controversy to secure the loan of $2,000 by the defendant to Currier, and to secure which, it had been agreed between all the parties, including the plaintiff, that defendant should have a first lien on said goods, from said Currier, the money loaned being paid directly to plaintiff, and he crediting said Currier therewith, on account of the purchase by said Currier of the goods in controversy of the plaintiff; and that plaintiff had actual knowledge, or full opportunity or means of acquiring actual knowledge, at the time that the defendant took from said Currier, for said loan, his four notes of $500 each, payable, respectively, in three, six, nine and twelve months, from date of July 5th, 1872, instead of giving him one year's time to pay said loan; then the plaintiff, as such mortgagee, is not entitled to the possession of said property as against the lien of defendant. And if any part of said debt of said Currier to defendant is unpaid, and the goods claimed are not of greater value than necessary to secure the unpaid balance, of his debt, the finding must be for the defendant."

The court then found for the defendant, and found that the value of the property in controversy at the beginning of the suit was $1,300, and gave judgment in favor of the defendant.

Whether the writing signed by Currier is to be regarded either as a bill of sale or mortgage, Foster would be estopped from disputing its validity, provided it was

taken by Gillespie as a first lien on the property in conformity with the agreement made between Gillespie, Currier and Foster. To allow him to do so would operate as a fraud upon the rights of Gillespie, and hence, we think, the instruction asked by plaintiff was properly refused. On the other hand, if taken in violation of the contract between the three parties, especially between Foster and Gillespie, that Gillespie as a condition to being entitled to a first lien on the goods, was to give Currier twelve months credit on the $2,000 loaned him, then it could have no validity as against Foster, unless he knew of the change in the terms of credit given to Currier. The instruction given by the court, while it recognizes the above principle, is vicious in so far as it contains the words "or full opportunity or means of acquiring actual knowledge."

The evidence shows that at the time Currier gave his four notes to Gillespie, that plaintiff, though in and out of the room while the defendant and Currier were drawing the writing, had no intimation of any change, or contemplated change, in the agreement to put him on inquiry, and, therefore, had a right to suppose that the agreement was being carried out as it was made. Had he been informed that a change was intended, and then failed to have availed himself of the opportunity he had to inquire in regard to it, he would have been chargeable with notice. *Rogers v. Jones*, 8 N. H. 264.

For this error the judgment will be reversed and cause remanded, with the concurrence of the other judges.

REVERSED.